IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LEONARD DANLEY, SR.,

    Plaintiff,

              v.

WELLS FARGO BANK, N.A.,

    Defendant.

Civil Action No.
1:25-cv-00019-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s

motion for summary judgment [ECF 18] and Plaintiff Leonard Danley, Sr.'s

motion for leave to file out of time [ECF 22]. For the reasons stated below, both

motions are **GRANTED**.

## I.    Background

The following facts are undisputed or are supported by undisputed

evidence in the record. Danley owns a piece of real property in Douglasville,

Georgia (the Property).[1] In 2006, he obtained a loan on the Property from Wells

Fargo (the Loan).[2] The Loan is evidenced by a Note, and secured by a Deed to the

Property.[3] The Deed required Danley to timely make all payments due under the

---

[1]    ECF 22-1, ¶ 1.

[2]    *Id.* ¶ 4.

[3]    ECF 18-3, at 12–18 (Note), 20–38 (Deed); ECF 22-1, ¶¶ 5, 8–9.

Note.[4] It also required that Danley not "destroy, damage or impair the property, allow the property to deteriorate or commit waste on the property."[5] It prevented Danley from permitting mold to affect the Property.[6] Further, the Deed gives Wells Fargo the right to secure the Property, including entering it to eliminate dangerous conditions, in the event of default.[7]

Starting in 2020, Wells Fargo suspended Danley's obligation to make payments on the Loan for 18 months because of the COVID-19 pandemic.[8] By September 2021, however, Danley had no suspension or forbearance of his obligation to repay the Loan.[9] The Loan matured in July 2021 and has an unpaid principal balance of $71,821.32. Danley has not made any payment on the Loan since at least July 2021.[10]

Danley concedes that no one has lived at the Property since early 2020.[11] Danley did not frequently visit the Property after it became unoccupied, and does

---

[4]    ECF 18-3, at 22, § 1; ECF 22-1, ¶ 10.

[5]    ECF 18-3, at 24, § 6; ECF 22-1, ¶ 13.

[6]    ECF 18-3, at 29, § 18; ECF 22-1, ¶ 14.

[7]    ECF 18-3, at 25, § 8; ECF 22-1, ¶ 15.

[8]    ECF 22-1, ¶ 28.

[9]    *Id.* ¶¶ 29–32.

[10]    *Id.* ¶¶ 43, 46–49, 53.

[11]    *Id.* ¶¶ 16–19, 55.

not know whether there was visible mold inside the home.[12] On March 14, 2023, Danley called the police because a contractor was removing drywall from the Property; the contractor informed Danley that he was performing work for Wells Fargo.[13]

## II.     Discussion

### A.      Motion for Leave to File Out of Time

#### 1.      Procedural History

Wells Fargo moved for summary judgment on July 9, 2025.[14] Therefore, under the Court's Local Rules, Danley's response was due 21 days later, on July 30. LR 7.1(B), NDGa. On August 6, Danley filed an opposition brief and a purported statement of material facts in dispute, but did not include a response to Wells Fargo's statement of undisputed material facts.[15] Wells Fargo filed its reply on August 15, including a response and objection to Danley's statement of material facts in dispute.[16] Then, on August 21, Danley filed a motion for leave to file his response to the summary judgment motion out of time.[17] His filing included a

---

[12]    *Id.* ¶¶ 19, 23.

[13]    *Id.* ¶ 25.

[14]    ECF 18.

[15]    ECFs 20, 20-1.

[16]    ECFs 21, 21-1.

[17]    ECF 22.

belated response to Wells Fargo's statement of undisputed material facts.[18] Danley's motion explains that his age and serious health issues prevented him from completing his response on time. He says he did not realize it was late until Wells Fargo filed its reply brief.[19]

While Wells Fargo does not object to the Court's consideration of Danley's August 6 filing, it does object to Danley's August 21 response to its statement of undisputed material facts.[20] Wells Fargo describes this, not as a mere late filing, but as an attempt to correct Danley's substantive failure to have responded to the statement of undisputed facts in the first place.[21] Wells Fargo says this is prejudicial because it had already filed its reply brief which could not have taken into account the contents of Danley's August 21 filing.

### 2.    Discussion

Federal Rule of Civil Procedure provides that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Four factors are generally relevant to this determination:

---

[18]    ECF 22-1.

[19]    ECF 22, at 2, 7–8.

[20]    ECF 23.

[21]    *Id.* at 2.

(1) the danger of prejudice to the non-moving party; (2) the length of the delay; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Satco Prods., Inc. v. Seoul Semiconductor Co.*, 551 F. Supp. 3d 1329, 1331 (N.D. Ga. 2021) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

The second, third, and fourth factors favor Danley. His August 21 submission was only three weeks late and did not delay proceedings in this case. Danley describes himself as "an 81-year-old licensed attorney" who suffered serious health issues that hindered his ability to timely file a response to Wells Fargo's summary judgment motion.[22] Wells Fargo does not contend that Danley acted in bad faith, nor is there any indication of such conduct. Although there is some minor prejudice to Wells Fargo from not having the last word in support of its summary judgment motion, there is a strong preference in this Circuit for deciding cases on the merits when possible, "not based on a single missed deadline." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014).

Accordingly, the Court declines to disregard Danley's August 6 and 21 responses because they were late. However, those responses do little to support his claims because, while they are full of argument and invective, they point to

---

[22]   ECF 22, at 2.

little by way of actual evidence. Danley's statement of material facts in dispute, for example, cites no record evidence other than what was filed by Wells Fargo in support of its summary judgment motion.[23] The same is true of Danley's denials of Wells Fargo's statements of material fact.[24] The Court cannot consider facts unsupported by citations to record evidence. LR 56.1(B)(1), (2); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (explaining that the plaintiff's "failure to comply with [this Court's] local rule 56.1 is not a mere technicality").[25] As a result, Danley—the party who bears the burden of proof at trial—has failed to show genuine disputes of fact on essential elements of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.    Motion for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence is viewed in the light most

---

[23]    *See generally* ECF 20-1.

[24]    *See generally* ECF 22-1.

[25]    Indeed, Danley (a Georgia lawyer admitted to practice before this Court) was aware of this requirement, because the Court denied his own motion for summary judgment in part on this basis. ECF 25, at 5–6.

favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Id.* at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999) ("All reasonable doubts about the facts should be resolved in favor of the non-movant."). But the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The moving party is entitled to judgment as a matter of law where the non-movant fails to make a sufficient showing on an essential element of claims on which he has the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

Wells Fargo moves for summary judgment on each of Danley's seven claims,[26] and Danley opposes the motion.[27] The Court addresses each claim in turn.

### 1.    Trespass to Personal Property/Conversion (Counts I, IV)

O.C.G.A. § 51-10-3 provides for recovery for damages done to personal property. A claim for conversion lies for the unauthorized assumption of rights over the personal property of another. *Dierkes v. Crawford Orthodontic Care, P.C.*, 284 Ga. App. 96, 99 (2007). Danley argues that photographs produced by Wells Fargo show that there was personal property at the home, including "beds, lamps,

---

[26]   ECF 18.

[27]   ECFs 20, 22-1.

light fixtures, clothes, cabinets, bikes and other personal items."[28] But he has not cited any specific record evidence identifying the exact personal property that was allegedly damaged or converted, nor pointed to any evidence of the value of such property. Moreover, "to make out a conversion claim, 'the plaintiff must show title to the property, possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit.'" *Wilson v. LoanDepot.com, LLC*, No. 1:20-CV-1175-TCB, 2021 WL 7708406, at *5 (N.D. Ga. Nov. 10, 2021) (quoting *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1372 (N.D. Ga. 2004)). Danley has not made such a showing. These claims cannot survive summary judgment based on Danley's generic assertions of harm unsupported by record evidence.

### 2.    Criminal Damage to Property (Count II)

Danley brings this count under O.C.G.A. § 51-9-1, which (despite the nomenclature used in the complaint) provides a civil cause of action for ***unlawful*** interference with a person's possessory interest in realty. *Goia v. CitiFinancial Auto*, 499 F. App'x 930, 936 (11th Cir. 2012) (per curiam). Danley contends that, under the Deed, Wells Fargo was required to contact him before entering the Property; since it did not, it is liable for the alleged damage to the home.[29] But this claim does

---

[28]    ECF 20, at 9. *See also id.* at 12–14.

[29]    *Id.* at 10, 15.

not depend on resolution of the parties' dispute about whether the Property was abandoned, as Danley argues.[30] Rather, whether Wells Fargo's (or its agent's) entry onto the Property was unlawful depends on the terms of the parties' contract. That is a question of law.

Danley asserts that Section 6 of the Deed required Wells Fargo to give notice because it says

> Lender [Wells Fargo] or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.[31]

While true, Danley's argument is incomplete. Section 6 deals with "preservation, maintenance and protection of the Property," and "inspections." It provides that "Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property."[32] But Wells Fargo does not assert that it entered the Property on this basis. It instead contends that Danley was in default under the Note and that Section 8 of the Deed therefore gave it the legal right to enter the Property to protect its interests.[33] Wells Fargo is correct.

---

[30] ECF 22, at 21.

[31] ECF 20, at 15.

[32] ECF 18-3, at 24-25, § 6.

[33] ECF 18, at 11-13; ECF 21, at 6-9.

In relevant part, Section 8 states:

> **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs. . . .[34]

Nothing in Section 8 required Wells Fargo to provide notice when entering the Property in the event of default. Danley admits that, when Wells Fargo made entry in March 2023, the Loan had matured and he had made no payments on it since at least July 2021.[35] Nor had anyone lived at the Property for several years.[36] Danley's admitted failure to make payments on the Loan when due was an event of default under the Note.[37]

Danley's promissory estoppel argument that he was still negotiating with Wells Fargo about the Loan and that its representatives told him not to make

---

[34]   ECF 18-3, at 25, § 8.

[35]   ECF 22-1, ¶¶ 43, 46–49, 53.

[36]   *Id.* ¶¶ 16–19, 55.

[37]   ECF 18-2, at 15, § 12 ("I will be in default if . . . I fail to pay the full amount of any payment when due.").

payment during those negotiations[38]—unsupported by any record evidence—is contrary to the express terms of the parties' contract. In fact, the Deed itself provides that extensions of payment terms, modifications, or forbearance do not constitute waivers of Wells Fargo's rights.[39] *McClain v. Bank of Am., N.A.*, 637 F. App'x 552, 555 (11th Cir. 2016) ("[The borrower's] failure to make mortgage payments, arguably her most significant obligation under the Security Deed, triggers [the lender's] ability to enter the Property and protect its security interest by all reasonable and appropriate means necessary. Permitted actions include 'making repairs,' which presumably involves entrance onto the Property.").[40]

Since Wells Fargo had the legal right to enter the Property pursuant to the parties' contract, no claim under O.C.G.A. § 51-9-5—which requires unlawful interference—can lie.

### 3.    Negligence (Count III)

To establish a claim for negligence under Georgia law, the plaintiff must show a duty, breach, causation, and damages. *City of Douglasville v. Queen*, 270 Ga.

---

[38]   ECF 20, at 6–7.

[39]   ECF 18-3, at 26–27, § 10.

[40]   Danley misreads *McClain* as requiring notice to a borrower before entry onto property by a lender when there is a payment default. ECF 20, at 15. Not only does *McClain not* suggest that notice is required under such circumstances, it rejects an argument similar to the one Danley makes about the notice requirement under Section 6 of the Deed. 637 F. App'x at 555 n.3.

770, 771 (1999). Danley's negligence claim is predicated on the same theory as his O.C.G.A. § 51-9-1 claim—that Wells Fargo was required to obtain his permission before sending a contractor onto the Property.[41] As discussed above, because Danley was in default, Wells Fargo did not need to provide notice or obtain permission to enter the Property to preserve its interests.[42]

### 4. Vicarious Liability (Count V)

Danley's vicarious liability claim is similarly premised on the alleged wrongful entry onto the Property and destruction of his personal property.[43] Since entry onto the Property was not wrongful and Danley has provided no evidence supporting his claim for the destruction of personal property, he cannot proceed on this claim.

### 5. Intentional Infliction of Emotional Distress (Count VI)

To recover for intentional infliction of emotional distress, a plaintiff must show intentional or reckless conduct that is extreme and outrageous, and that caused severe emotional distress. *Trimble v. Cir. City Stores, Inc.*, 220 Ga. App. 498, 499 (1996). Danley argues that "entering and demolishing a person's home without

---

[41] ECF 1-4, ¶¶ 23–25.

[42] In opposing summary judgment, Danley also suggests that Wells Fargo failed to supervise its contractor. [ECF 20, at 15-16.] But Danley asserted no such claim in his complaint and has pointed to no record evidence supporting an alleged failure to supervise.

[43] ECF 1-4, ¶¶ 30–33.

notice—particularly while the property is undergoing hardship and the owner is communicating with the lender—can rise to the level of 'extreme and outrageous' conduct."[44] He asserts that whether conduct is outrageous is a jury question.[45]

Whether the conduct alleged "is sufficiently extreme or outrageous to support recovery is a question of law for the trial court," *id.* (citing *Yarbray v. Southern Bell Tel.*, 261 Ga. 703, 706 (1991)); only where "reasonable persons could differ," is it a jury question, *id.* at 500 (citing *Gordon v. Frost*, 193 Ga. App. 517, 521 (1989)). Here, there is no question for the jury. Entry onto the Property consistent with the terms of the parties' contract was not extreme or outrageous as a matter of law. *Thompson-El v. Bank of Am., N.A.*, 327 Ga. App. 309, 312 (2014) (quoting *Blue View Corp. v. Bell*, 298 Ga. App. 277, 279 (2009)) ("The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.").

### 6.   Stubborn Litigiousness (Count VII)

Under O.C.G.A. § 13-6-11, a party may recover expenses of litigation where the defendant has acted in bad faith, been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. Such a claim cannot proceed in the

---

[44]   ECF 20, at 17.

[45]   *Id.*

absence of a viable substantive claim for liability.[46] *U-Tec Constr., Inc. v. Phoenix Loss Control, Inc.*, No. 1:21-CV-00265-JPB, 2022 WL 902727, at *5 (N.D. Ga. Mar. 28, 2022) (citing *Sandy Springs Toyota v. Classic Cadillac Atlanta Corp.*, 269 Ga. App. 470, 472 (2004)).

## III.   Conclusion

Danley's motion for leave to file out of time [ECF 22] is **GRANTED**. However, because he has not shown a dispute of material fact and Wells Fargo is entitled to judgment as a matter of law, Wells Fargo's motion for summary judgment [ECF 18] is **GRANTED**.

The Clerk is **DIRECTED** to enter judgment in Wells Fargo's favor and to **CLOSE** this case.

**SO ORDERED** this 31st day of March, 2026.

Steven D. Grimberg
United States District Judge

---

[46]  To the extent Danley seeks punitive damages in his *ad damnum* clause [ECF 1-4, at 8], such damages are also foreclosed by the absence of a live substantive claim. *U-Tec Constr.*, 2022 WL 902727, at *5 (citing *APAC-Se., Inc. v. Coastal Caisson Corp.*, 514 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007)).